now call the case of Charles Johnson and Janet Dickenson v. NPAF Solutions. May I please the court? I'm Eric Alan Isaacson for Janet Dickenson who is an objector to the settlement of the award below and who is the appellant on appeal before this court. There are basically four major issues I'd like to focus on this morning. Each of them involve questions of law subject to this court's de novo review. I understand that ordinarily a discretionary fee award or settlement approval is reviewed for abuse of discretion, but underlying legal issues of course are de novo. The first issue is the fact that the court gave an insufficient explanation for its determinations, which is required by precedence and by Rule 23H. Second issue is the notice where the objections were required to be filed before the plaintiffs filed their motion for final approval and their motion for attorney's fees. The third issue is the incentive awards, which I believe are prohibited by the Supreme Court's decisions in Reno and Pettis from 1881 and 1885. And the fourth issue is the continued viability of the Johnson factors, which the Supreme Court rejected in Purdue. As to the first issue, sufficient explanation, the court listed the factors that it was supposed to require, but it didn't have any analysis, any discussion, any findings of fact concerning any of them. The Supreme Court's holding in Protective Committee v. Anderson in 1968 said that a court in approving a settlement that its ruling cannot be sustained if, and I quote, there is no explanation of how the strengths and weaknesses of the causes of action were evaluated or upon what grounds it was concluded that a settlement was fair and equitable, end quote. That's a standard that has been adopted by controlling precedents for this court and that the district court violated. With respect to attorney's fees, a court, according to Rule 23H, and I quote, must find the facts and state its legal conclusions, end quote. Again, fact finding and legal conclusions are completely absent here. All there is is a list of factors that should have been considered. There's no explanation of how the court considered them. Finally, with respect to objections to a settlement or fee award, this court's controlling precedents require, and I quote, reasoned responses to the objections, including findings of fact and conclusions of law necessary to support the response, end quote. That's from Cotton v. Hinton, 1977, Fifth Circuit decision. So going all the way back to Cotton, there was a requirement that the court have reasoned responses to objections, including the findings of fact and conclusions of law. Those are completely absent here. With respect to the notice issue, Rule 23H says that a motion for attorney's fees, and I quote, must be served on all parties and for motions by class counsel directed to class members in a reasonable manner, end quote. The Ninth Circuit and Seventh Circuit have held that that means that the motion has to be filed and served on class members, made prior to the deadline for objections. And if, you know, that objections are made due before the motions are filed, there's no basis for the, or inadequate basis for objectors in the class or potential class members or potential objectors to evaluate the motion. The Third Circuit has adopted that view in dictum, and the Supreme Court of Alabama has required by constitutional due process. Here, constitutional due process and 23H were violated by the requirement that objections be filed before the motions for final settlement approval and for attorney's fees were filed. Counsel, this is Judge Baldock, and I have a question in regards to the in-bank case of Baranski, I guess is the way that it's pronounced in the Eleventh Circuit. But could you comment on whether or not you think that Baranski, as and when the opinion comes down in that case, is that going to affect what I look at as to your point number one, your four, five, and six, and whether or not the panel needs to wait until that opinion comes out to completely resolve your argument. Your comments. Well, yes, Your Honor. The first question in Baranski that the in-bank court heard and is focused on is whether there's Article III standing in that case. If the in-bank court concludes that there is no Article III standing in Baranski, then the in-bank decision obviously would have no impact on this court's decision. If the in-bank court were to decide that there is Article III standing in Baranski, I would think that it would go on and address the remaining issues and that its holding would be binding. Now, given the fact that I don't have any insight at this point on which way Baranski is coming out on the Article III standing, you probably would want to wait for a decision in Baranski to decide the merits issues in this case, since an in-bank opinion in Baranski could, in fact, resolve those I did a Rule 23.8 submission with Newberg on class actions saying that incentive awards are made of whole cloth. Newberg, the leading authority on class actions, says that there is no authoritative basis for granting incentive awards to class actions. Just a double, Martin. May I ask a question about your argument in that regard? Are you asking our court to disavow incentive awards altogether, or are you just asking us to address the particular incentive award to Mr. Johnson in this case? I'm asking this court to disavow incentive awards except where they have been expressly provided. I understand that there are limited statutory grounds for incentive awards. There's the Fair Debt Collection Protection Act, FDCPA. The Debt Collection Protection Act, Congress has provided that in class actions there will be a cap on overall class recoveries, but then goes on to say that you can get the amount of overall recovery for the class plus $1,000 for each plaintiff, for each named plaintiff, that is. So in that statute, Congress has expressly authorized an incentive award not to exceed $1,000. Where Congress authorizes an incentive award, they're fine. Where Congress hasn't authorized an incentive award, I think you're controlled by Greeno and by Pettis, which are both class actions, both decided by the Supreme Court. They're the foundational decisions for the Common Fund Doctrine that continues to control in class action litigation. Counsel, this is Judge Baldock. Is all that in your brief? Yes, Your Honor. That is in my brief. I've cited Greeno, I've cited Pettis. I thought about this. The Fair Debt Collection Practices Act, no, that is not in my brief. Okay. Now, you can find it, I think, in a subsequent history in one of the cases that's cited in my brief, a case called Visale from the Sixth Circuit, where there is a subsequent unpublished decision that cites that statute and the fact that there's a congressional authorization there. I think that there may be other instances where there is very limited congressional authorization under specific statutes. But it's just like with fee awards. If Congress doesn't provide for shifting attorneys' fees, courts can't shift fees of their own court. Alyeska held that. Alyeska, a Supreme Court decision that specifically cited Greeno and Pettis as cases that provide a limited exception with the Common Fund Doctrine. Greeno and Pettis say you can award attorneys' fees under the Common Fund, but that the named plaintiff cannot get recompense for personal services. Two minutes, counsel. Two minutes, counsel. This is Judge Newsom. Can I ask you a quick question? So, setting aside sort of whether they should or shouldn't have done so, what do you make just descriptively of the fact that lower courts seem simply to have ignored Greenoff and Pettis and created this entire body of law about incentive awards? That starts in the late 1970s and early 1980s, about a century after Greeno and Pettis were decided. And what happens is the plaintiff's lawyers go in and they file their motion for settlement approval, attorney's fees, and for an incentive award, and they don't tell the court that Greeno and Pettis prohibited it. And if an objector doesn't show up, and I'll tell you objectors show up only in a tiny percentage of cases, if objectors don't show up, district judges tend to approve of motions that are unopposed. So, you ended up with a large body of district court decisions that were approving incentive awards, and then you have a number of appellate decisions that approve of the incentive awards, noting that there are a lot of district court opinions that have done this, but that do so without discussing how Greeno and Pettis, the Supreme Court said, they're prohibited. And they do so without really coming to grips with the fact that Congress hasn't authorized them, the federal rules haven't authorized them. Rule 23H authorizes a district court to award attorney's fees. It doesn't authorize district courts to award incentive awards. And with respect to the attorney's fees in common fund cases, they're governed by what? Going back to Greeno and Pettis, which the Supreme Court has not overruled or limited with respect to its holding that you can award attorney's fees from a common fund, but that you cannot award compensation for personal services of the named plaintiff. Now, if you want me to, I will also address the Supreme Court's decision in Purdue and the Johnson factors, although I fear my time has run. You know, since I don't see the clock, I have to rely on Ms. Tisa to answer that question. She's right. Okay. Thank you. Would you like me to address Purdue and the Johnson factors? No, you've got four minutes of rebuttal, so why don't you do it then? Thank you, Your Honor. Sure. Good morning, Your Honors. Michael Greenwald on behalf of the plaintiff and the class. The district court did not abuse its discretion in approving the settlement, awarding attorney's fees, and approving an incentive award to Mr. Johnson. So to put this case in context, this is an all-cash settlement for over $1.4 million, which provides approximately $80 to more than 9,500 people who received unwanted robocalls. There are no coupons or vouchers, no artificial caps or limits on how much each person could receive, and none of the settlement funds will revert to the defendant. There was no clear sailing provision on attorney's fees, and by that, if the court had awarded a lower fee or a lower incentive award or even none at all, it would not have impacted the finality of the settlement, as the settlement was not contingent on either request. So none of the red flags that have rightfully given courts pause when scrutinizing class settlements are present here. And underscoring and framing this case appropriately, but underscoring the reasonableness of the settlement here, are the big changes in TCPA law that happened after the settlement was reached. So as just one example, and this was an issue we flagged for the district court at the final fairness hearing, is that the definition of an auto dialer under the TCPA could be interpreted more narrowly. And if that was done, it could eliminate class members' claims on the merits. So at the time of the settlement, of course, the prevailing thought, and this stemmed from multiple FCC orders, was that predictive dialers, so those are dialers calling automatically but from stored lists, were dialers under the TCPA. That interpretation has, of course, changed in this circuit. And to be an auto dialer here now requires random or sequential number generation. Of course, these calls are not randomly or sequentially generated. These are debt collection calls for overdue medical bills targeting specific people. And why this matters is because if Ms. Dickinson had her way and the settlement is either thrown out or goes back to a litigation posture, her claims are likely to fail on the merits as she's set forth no evidence in her two declarations before the district court that she received any prerecorded messages or other aspects of potential liability here. This is Beverly Martin. You're not challenging Ms. Dickinson's standing to object, are you? I've never seen where you did that. No, Your Honor. I'm not challenging her standing to object. The record shows that she received calls. What I am challenging is her overall objection to the unfairness of the settlement where, given changes in law after the settlement, should this court reverse approval of the settlement and find the district court abused its discretion, that Ms. Dickinson likely has no claim on the merits in light of intervening change in law. Got it. Thank you. This is Judge Newsom. Not to try to knock you off your stride or to take things out of order, but can we talk about incentive awards for a sec? Yes, Your Honor. Talk to me about Greeniff and Pettis. I mean, you know, the Supreme Court has said time and time again to the lower courts, we'll reverse our own decisions. You don't get to reverse them for us. And so what do we do with Greeniff and Pettis? Your Honor, these are cases from the 1800s that were... So is Marbury v. Madison. I mean, you know... That is true, Your Honor, but the difference, it's not just that the cases are older, it's that they predate Rule 23. But what does Rule 23 say about incentive awards? The rule itself doesn't specifically authorize incentive awards, but the circuit courts and district courts throughout the country to have addressed it have approved incentive awards. And in our brief, we, of course, cite the Ninth Circuit, the Third Circuit, the Eighth Circuit. I get that. I get that, and I'm not trying to be argumentative, but I'm just trying to figure out the lay of the land. I think this is an odd sort of corner of the law, because Greeniff and Pettis, it seems to me, are pretty clear. They say you can't even draw, in effect, a salary. So let alone, it seems to me, could you draw an incentive award. And Rule 20, they're old, fine, but Rule 23, as you acknowledge, says nothing about incentive awards. And then the only answer is, well, circuit courts have authorized them, but it seems to me that they've authorized them in the teeth of Greeniff and Pettis and without any footing in Rule 23. So they've just gone rogue. Well, Your Honor, I don't think they've gone rogue. I think the circuit courts that have addressed it and the district courts that have addressed it have provided excellent reasons why, in an appropriate case, an incentive award is allowed, and they've set forth a variety of factors that district courts should consider. So it's certainly not something that is an automatic right or something that is mandated in any way by Rule 23, but in appropriate cases district courts have the discretion, when weighing appropriate factors, to provide an incentive award. So just how, though, do you distinguish Greeniff and Pettis, other than that they're old? They do say, I guess you acknowledge, basically, the lead plaintiff can't draw a salary. That is correct, and the lead plaintiff in this case certainly has not drawn a salary. Right, but don't you think an incentive award, I mean, is a bridge beyond a salary, right? I mean, it's basically, I don't mean to sort of put a derogatory label on it, but it's just sort of a payoff, right? I mean, it's a bounty. So that seems worse than what was going on in Greeniff and Pettis. So how do you distinguish those cases other than them being old? Well, I would disagree that it is, Your Honor, that it is a payoff or a bounty per se. I think it is a way of how do you fairly allocate the monies in a common fund in this case? How do you fairly allocate those resources to properly make up for efforts and the efforts and the benefits that one class member, in this case the named plaintiff, has provided that absent class members have not? So let me ask you one more question, and then I promise I'll cut you loose because I know you've got other things to talk about. But we've got this case out of the old Fifth Circuit called Kincaid v. General Tyron Rubber that says by choosing to bring their action as a class action, the named plaintiff disclaimed any right to a preferred position in the settlement. Why isn't that hand in glove with Greeniff and Pettis and sort of against the tide of other courts authorizing incentive awards? Again, Your Honor, I think it has to do with what is the fairest way to allocate resources based on unique factors in a case. And so I would not characterize it as a payoff or a bounty. Is it a preferred position in the settlement? I don't know that I think preferred is the right word. It is certainly a different position. $6,000 different, right, or $8,000. I can't remember what the number was. It's $6,000, Your Honor. Yes, I mean, it seems to me it's a $6,000 difference. I would call it a preference in the settlement. Well, again, it's $6,000, yes, but there's not a bright-line rule that says all class members have to be awarded the exact same amount. There are different class actions that are approved where different class members can get more, for example, based on, in a securities case, how many shares they had during the class period. But that's not what's going on here, right? I mean, it's not that your named plaintiff had a better claim. No, that is correct. It's not that he has a better claim. It's that he put himself out there, subjected himself to scrutiny. He responded to discovery. He has dedicated years to this case. Two minutes, counsel, two minutes. He is the reason why this recovery is possible. I've taken way too much of your time, and if Judge Martin wants to give you a little bit, ask for that. May I just ask you a question? This is not my area of expertise, which is probably painfully obvious, but time after time we see these deadlines for class members to object to these settlements set before the class can know what the attorney's fees are going to be. And I just don't, I mean, it's not, I mean, I don't think that's a good practice, even aside from what the law says. Why do people continue to do that? Do you continue to do that? Your Honor, I think that's a fair question, and no, we do not do that anymore. There was a split in law. The law seems to be moving toward the requirement of filing fee petitions prior to the And that's, I would agree that that is best practice. Now, in this case, though, I think the facts are different, in that the motion for attorney's fees was filed 30 days prior to the final fairness hearing, and not just being available on PACER, but was posted along with the declaration in support on the dedicated settlement website. So class members had on the website the motion, the supporting documentation 30 days in advance. And also to address the first part of your question, Your Honor, the class notice here specifically instructed or specifically informed class members as to what the fee would be, that it would be what we would seek, which was 30 percent of the fund. So that not only went out in the postcard notice that went to class members, but was also in the long-form question-and-answer notice posted on the settlement website. So it's not as if class members were unaware of what the fee sought would be, and, of course, they objected to that fee request. They knew the question is the timing of the motion itself. Time has expired. Thank you. If you, Judge Newsom's prompting, if there's one other thing you'd like to touch on, I'll give you a minute or so to do that. Thank you, Your Honor. The last point I would make is with respect to attorney's fees, the law in this circuit has been well settled for quite some time, that in a common fund case, which this is, and particularly in a common fund case involving a statute that is not a fee-shifting statute, unlike in Purdue, so the TCPA is not a fee-shifting statute, that attorney's fees are to be awarded as a percentage of the common fund, and that's what the district court did here. And so with respect to the attorney's fees and the incentive award,  and we ask that this court affirm the district court's order. Thank you. Wait just a minute. This is Judge Baldock, because now we're touching on an area where I can't tell what the district court did, and looking at it, all he did was just order attorney's fees, and there's no specificity about it, no discussion about it. So while you may be entitled to attorney's fees, we're entitled to something to be able to review, and I don't see that here. Your Honor, the district court at the final fairness hearing, of course, walked through the approval factors for the settlement as a whole, and then with respect to the attorney's fees, the district court directed me, as counsel for the plaintiff, to walk through all of the factors, not only for the settlement, but for the attorney's fees, and that's set forth in the transcript of the final fairness hearing. But also, this court's precedent in Friends of the Everglades versus South Florida Water Management District is that, and I quote, we will find abuse of discretion when the decision is in clear error, or when neither the district court's decision nor the record provides sufficient explanation to enable meaningful appellate review. And I would submit that given the extensive briefing on the objections, the response, the final fairness hearing transcript, all put together, the motion for attorney's fees and declaration of support, that the full record supports the district court's decision. Well, that would make it where we would be doing the job of the district court, rather than the district court doing it first, so that we could review. But anyway, thank you for your response. Thank you. Hi. Good morning. This is Maura Monahan from Debevoise & Clinton. I represent Enpass Solutions, LLC, which is the defendant appellee in this case. Can everybody hear me? Yes. Thank you. I can. Yeah. Thank you very much. I'll first note, because of the direction that the argument has taken, that you will have noticed that Enpass Solutions, LLC, did not comment in its brief on issues like the incentive award or the attorney's fees award. And that is because Enpass Solutions didn't enter into a settlement that was conditioned on those items. The settlement expressly specifies that it is not dependent upon the district court's approving the class plaintiff's request for such payments, or awarding the particular amounts sought by class plaintiffs, and that in the event the district court declined class plaintiffs' requests or awards less than the amount sought, the settlement would continue to be effective and enforceable by the parties. And so from Enpass Solutions' perspective, one of the options available to this court is to affirm the terms of the settlement, other than the fee award and the incentive payment or either of them, and that would not affect the enforceability of the remainder of the settlement because those were made expressly severable. With respect to the substance of whether the settlement was fair, adequate, and reasonable, again, from Enpass Solutions' perspective, the key factor that the objector overlooks is the substantial litigation risk that would have been inherent in any further proceedings of the case. Class certification for a litigated class would have been, in our view, and I think the district court agreed and even objector's counsel acknowledged this during the argument below, a very significant challenge in this case, and in particular, it would have been difficult for the plaintiff to satisfy the Rule 23b3 predominant standard. That's because of the nature of Enpass Solutions' business. It's not a telemarketer that calls random numbers without consent. Instead, it's a medical debt collector that calls patients of its hospital clients at cell phone numbers that they have provided to the hospitals, and sometimes when it makes those calls, the person who answers denies being the debtor. If they can't confirm that it is the correct number, Enpass Solutions then codes the number as WN, but in many cases, the WN code is entered where it is, in fact, a call recipient who had provided consent. Not everyone wants to receive a call from a debt collector when they're at work, for example, and we have evidence that in a number of cases, the number that had been coded WN subsequently called back to discuss a payment arrangement for the debt, confirming that that was the correct number. Two-minute warning, counsel. Two-minute warning. Thank you. Our position is, had the case continued into litigation, the individualized issues that we would have shown could have defeated class certification, which would have left the class in a much worse position. In addition, the D.C. Circuit, as we noted in our brief to this court, also created individualized issues when it ruled that calls to a cell phone number that had been transferred to a subsequent holder might still be reasonable and not a TCPA violation, and that there wasn't a bright-line rule that it was only the first such call that could be considered reasonable. And that's particularly relevant to this objector, who appears to be, based on what we've learned so far, someone who was subsequently assigned a telephone number that had previously belonged to the party that had given consent to be called at that number. Mr. Greenwald raised the fact that in a case called Glasser v. Hilton Grand Vacations, 948S3-1301, this court in January of this year adopted a narrower definition of an auto-dialer that would also have, at a minimum, created individualized issues had the class continued to be litigated. And that's because under Glasser, just the use of the equipment that Enpass Solutions employs does not bring it within the purview of the TCPA. You would have to examine each case to determine whether or not a prerecorded message had been left. And so, in sum, Enpass Solutions' view is that the district court did not abuse its discretion by approving this settlement, given the substantial litigation risks that awaited further litigation of the class and the anticipated potential negative movement of the case law. We discussed with the court below that far from being an inadequate settlement, we felt that counsel had struck this settlement sort of just before the tide turned and that the class members were tired. Thank you, Your Honors. With that, I will conclude and rest on our briefs unless you have any questions for me. None from me. I'm a little bit like the neighbor at the cookout who's witnessing a family feud. May it please the court, this is Eric Alan Isaacson. Should I present my rebuttal? Did we lose everybody? Mr. Isaacson, wait a minute until you hear from Judge Martin, please. Thank you. Thank you. Just for the record, Judge Newsom is still on. So is Judge Waldock. I'm sorry, I'm sorry. That was totally my fault. I was muted and I didn't realize it. Mr. Isaacson, you are not objecting to Charles Johnson standing to represent the class in this case, are you? No, I am not objecting to Charles Johnson standing to represent the class. The record reflects in the amended complaint that he received multiple calls that violated the statute, and I think that Enpass put in a call list indicating that he actually received 16 calls. It is his line. So based on the factual record below, I think that he can easily establish his Article 3 standing in this case. Now, there is an argument that could be made that you need to establish standing by a preponderance of the evidence for settlement approval. But you didn't make that argument, right? Well, no, I have not made that argument, and I think that, quite frankly, he is going to be able to demonstrate that he has Article 3 standing. Basically, Enpass has conceded facts that are sufficient to support his Article 3 standing, so it's not an issue that I would be challenging by no means at all. Thank you. Now, with respect to Grinnell and Pettis preceding Rule 23, I want to point out that class actions have been around for a long time. The U.S. Supreme Court in 1853 recognized class actions in a case called Smith v. Swarmstead, which dealt with a lawsuit by Methodist ministers, a class action lawsuit by Methodist ministers following a schism in the church. The argument that giving incentive awards is the fairest way to do things is a policy argument. That's one to make to Congress. The Supreme Court of the United States has basically rejected that argument in Grinnell and in Pettis. With respect to the arguments that counsel made on the transcript and the record below, there's no question the district court recognized what the necessary factors are. I mean, the list of boilerplate factors are given, but the fact that counsel made arguments below regarding those factors does not amount to findings of fact and conclusions of law that are required by Rule 23H. There's no way that colloquy of counsel or argument of counsel amounts to a finding of the district court, which is what's required. I'd like to also point out that with respect to Enpass' argument on the ACA international case from the District of Columbia Circuit, the safe harbor that FCC's safe harbor for one call, I think, is contrary to statutory text and is not something that ought to be followed. Those arguments are ones that were made in response to objections. They're not ones that were presented at a point that class members could have responded to them by making objections that the basis for the settlement was inadequate, which I think is a very important consideration. With respect to Purdue and the Johnson factors, the Supreme Court in Purdue said the Johnson factors are too subjective to be useful, and Purdue endorses a lodestar common fund decision, Lindy from the Third Circuit, a 1973 common fund decision, and extends Lindy's holding that reasonable attorney's fees ought to be the attorney's lodestar from the common fund context where Lindy applied it to statutory fee shifting. I don't think Purdue can be distinguished from the basis that it's a fee shifting case. It says that reasonable attorney's fees, there's a strong presumption that it's the attorney's lodestar, and in a case like this, even if percentage fee awards remain permissible, the attorneys ought to be submitting their lodestar so the court can evaluate how much work they did and whether they're getting an inappropriate windfall, and the Supreme Court has not always applied percentage fee awards. In Greenough, it was not percentage fee award. In Olin versus Van Gemmerich, it was not a percentage fee award. I think there's still good law. Thank you, Your Honors. Thank you, and I apologize for taking up your time with a mute button that was on. No problem. All right, we appreciate the arguments. Very helpful.